Good morning. May it please the Court, my name is Jason Gerber, and I represent the appellant WMCV Phase 3, LLC. I would like to reserve three minutes for rebuttal, please. Your Honors, there are three issues that require overturning the judgment against WMCV. First, the District Court failed to enforce clear and unambiguous terms in two separate agreements. The first was WMCV's lease with the appellee Global Accents, and the second was the release that Global Accents obtained through the fraud of WMCV's former collection agent, SMI. That release, that WMCV was never a party to and never executed, could not discharge Global Accents' obligations and could not be enforced against WMCV. Secondly, the District Court erred when it found Global Accents' subjective belief in SMI's apparent authority was objectively reasonable, where Global Accents had to ignore information that was in its own possession, and Global Accents ignored red flags that should have caused it to question SMI's authority to act on WMCV's behalf. Yes, so just to be clear, on this one you're claiming that there is clear error? On that point, yes, Judge. So that really is the heart of where I'd like to explore with you, given that we have these findings of fact, and there's no doubt that your client got bamboozled one way or the other, but it doesn't mean that that necessarily tips the District Court's findings. So I would appreciate your comments on what precisely you think the District Court did wrong that would amount to clear error on that finding of the implied authority. Yes, Judge. To begin, this Court doesn't ever need to reach the issue of apparent authority to overturn this judgment because the contract issues would control. But on that issue of apparent authority, there was evidence presented that the Court could rely on to show that Global Accents had a subjective belief about that authority. The problem is the next step of that analysis was Global Accents' burden to show that that subjective belief was objectively reasonable. Well, when he calls the people and talks to the manager about this settlement, the manager said, that's a good deal. It doesn't say this person is committing a fraud, he doesn't represent any anymore. Doesn't that show that your client has already got the cat out of the bag when he's given this assurance that this is a good settlement? Your Honor, I think if you analyze the record and what was actually said during trial and what the testimony actually was, the conversation you're discussing was between Global Accents' principal, Mr. Partielli, and Mr. Kashani at the World Market Center. Who was a co-partner or a co-manager? Yes. He had a position of authority. Yes, Your Honor. If you review Mr. Partielli's testimony during the trial, at the portion where he discusses that conversation with Mr. Kashani, he never testifies that he brought up SMI in particular. He just testified that he called, they discussed the agreement and that it was for only $8,200, and Mr. Kashani says, well, that's a great deal because our attorneys are usually very aggressive and they usually go after the full amount, which in this case was more than $360,000. Mr. Kashani testified, and he had a declaration that was admitted into evidence as well, that he never knew who SMI was because that was never a part of the scope of work that he had. That isn't a question of what he knew. It's what the other person gained from the conversation. And here you've got a managing person who says it's a good deal. Wouldn't it be reasonable to believe that this good deal, if it came from this collector, if he wasn't their collector then, or he didn't know, there would be some difference. At least the person receiving the conversation could think there would be something different. It's only, it isn't whether the fact is, it's whether there's reasonable reliance. Judge, I agree. But I guess from WMCV's perspective, that conversation doesn't have the impact Global Accents wants it to have and doesn't have the impact that the lower court found it to have if SMI is never mentioned in the conversation. Mr. Kashani could have very reasonably believed that while they were having that talk, Mr. Partielli had received an offer directly from WMCV because WMCV never gave that authority to settle claims to anybody else. And so in those circumstances, if the only discussion is whether the amount of the settlement was valid and reasonable and something that would benefit Global Accents, then it doesn't create the apparent authority that's necessary for SMI to be able to take that step and for Global Accents to be able to follow it. Again, it's, we have case law in Nevada that makes clear that it has to be the statements of the principal and not the actions of the agent that create that apparent authority. But even if there was, there were no counsel, I'm, I'm, I think I'm looking at Partielli's direct. Yeah, that's right. He says, I had been in conversation, let's see, and I specifically told Mr. Kashani that I had been in contact with Shushuk and McCoy, Mr. Birdwell, and the last and final offer they had made me that they can settle this case is $8,200, and I told Jack, Jack, you know I've known you for a long time, and so on and so forth. Lines later, go forward and pay, but go forward and settle, that's a good offer. So what do we do with Mr. Partielli's statement that said, I specifically told Mr. Kashani that I had been in contact with Shushuk and McCoy? I apologize, that may be in reference to a conversation that they had had later on. There are two separate instances where they discussed. Well, just lines later, he, Jack said, Jack said $8,200 is a good offer to you. Go ahead and settle. Once you settle, come back to the building. And again, Judge, the, the only evidence of that conversation is that small portion of Mr. Partielli's. Isn't that sufficient?  We didn't hear the testimony. We have a cold record. So what's clear error here? The error is in Global Accents going forward and continuing to ignore the red flags. Now, what's the clear error in Judge Navarro accepting Mr. Partielli's testimony that he specifically told Mr. Kashani I had been in contact with Shushuk and McCoy, and they offered $8,200 to settle? Your Honor, I don't believe, I believe that there is, that evidence goes to the subjective belief, but it is not the only evidence and is not the central evidence to the objective belief. Counsel, this is, this I think is inconsistent with your statement that there was nothing in their conversation that indicated to Mr. Kashani that he was dealing with SMI. I apologize. I may have been referring to a different portion of the record, and I apologize. Certainly, if it's, if it's there in the record, then it was there. That's fine. I mean, we often, we often miss things. Now I've, now I've got this in front of you. So why is there clear error in Judge Navarro accepting Mr. Partielli's testimony on this point? On, on this point, Judge, I don't believe there's clear error with regard to that testimony, but the issue as it related to the apparent authority also should consider what Global Accents actually knew, and the issue arose that when it finally came time for Global Accents to sign the release with SMI, it did so by signing an agreement that wasn't with WMCV. But it had the, the, essentially the written out part of the name, correct? No, Judge. The release was signed with World Market Center Las Vegas, Inc., a Nevada corporation. That entity doesn't exist. I understand that, but when I say it had the written out part, when you take WMCV, if you write that out, don't you get World Market Center? Yes, World Market Center is, is the trade name and the logo that WMCV. But so in terms of apparent authority, there, there's a technicality there, but the judge is looking at the totality of the circumstances, isn't he, isn't she? Yes, Judge, but it's far beyond the technicality from WMCV's perspective that the lease was signed by an entity that wasn't the landlord. It was signed on referencing a tenant space that wasn't ever occupied by Global Accents and it was signed concerning a lease term that wasn't accurate to the actual lease. In addition, there's no dispute that Global Accents knew exactly who its landlord was. It had in its possession the lease that identified WMCV. It had in its possession payment instructions from WMCV during the original lease term that required Global Accents to pay WMCV Phase 3 LLC and Global Accents actually took the step to pay WMCV. The only checks from Global Accents to WMCV in this case were made out to WMCV Phase 3 LLC and so the error for the court, the clear error, was allowing an objective finding of reasonableness for that apparent authority where Global Accents had to ignore all of that information in its possession to get to that conclusion. But again, Your Honor, it's the... Go ahead, Judge Wallace. Hadn't that name appeared in earlier correspondence with Global? There are several correspondence included in the record. There are several that include WMCV Phase 3 LLC in the heading and on the side they include... Had been used earlier as a name for your client. The term used in the release was World Market Center Las Vegas, Inc., a Nevada corporation. That particular name has never been used by WMCV and did not appear in any of the correspondence. There are some that reference World Market Center. There are some that reference World Market Center Las Vegas, but that... But the real, the difference is, quote, a Nevada corporation. That's the difference in prior references and this reference? Yes. It's a reference to an entity that has no association with WMCV and never has. What do you make of tying up with Judge Bivey's question about SMI, that this employee, Esmeralda Dominicus said, basically she said, that your case has been assigned to Shishook and McCoy and you should contact them to resolve this debt issue. So that was on the table and then, of course, you have the additional testimony. So when you put all of this together, that seems to me what was the basis for Judge Navarro's decision and as I understand your argument, you're saying it could be interpreted differently. I believe it was an error for the court to find that the reliance was objectively reasonable when Global Accents had to ignore information in its possession. But from WMCV's position, this case remains at its center and has, from the beginning, a contract case. We have a lease that defines who Global Accents' landlord was and it's unambiguous. It's WMCV Phase 3 LLC. We have a release that defines the landlord as World Market Center Las Vegas, Inc. and it's unambiguous. The original lease between WMCV and Global Accents includes an integration clause that says that that agreement cannot be changed or terminated unless it's done by a written executed agreement between the parties. So when Global Accents, who failed to review the release before signing it to make sure it was with the right entity and never took the very simple step of comparing it to its lease, signs a contract with an entity that was not a party to the original lease, it accepted that responsibility and accepted that risk. The district court was not at liberty to disregard the unambiguous language of those contracts or to use extrinsic evidence like the emails or the other correspondence or, as Mr. Partielli testified, it says World Market Center on the side of one of our buildings because that's our trade name. The court wasn't in a position to accept that extrinsic evidence and then use it to interpret World Market Center, Las Vegas, Inc. must be the same thing as WMCV Phase III LLC. Would you remind me, did you move for summary judgment on that legal basis? We did move for summary judgment. I don't know if it was on that particular basis judged, but it was an issue that was raised during the trial and it was raised in our closing briefs as well. And, Your Honors, I believe I wanted to reserve three minutes for rebuttal, but I'm down to about a minute 45, so unless there are any additional questions, I'll take a seat now. Thank you. Thank you. Good morning, Your Honors. Michael Lee. May it please the Court. Michael Lee on behalf of the APA League Global Accents. To pick up on your last questions, the district court in this case has substantial and overwhelming evidence that supported the lengthy order that Judge Navarro had drafted in this case.  testimony. The first point of evidence was the stipulated and agreed upon pre-trial order that the appellant and APA League had agreed to at the trial in that they identified that SMI was originally retained by appellant and then it had assigned the Global Accents case to SMI defendants and then never informed Global Accents that they had terminated the SMI defendants. What we have during the course of trial is testimony from Jonathan Lailu, who is the General Counsel of World Market Center, in that he identified that they retained a new collection agent and the new collection agent was supposed to inform Global Accents that they had taken over the case, but that was never communicated. While they would like this case to be about a breach of contract, this case is about apparent authority. They did file a motion for summary judgment early in the case that was on the issue of actual authority. The district court granted summary judgment as to there was no actual authority, but there was a question of fact as to apparent authority. In terms of the underlying documentation and the evidence that went to the inquiry of apparent authority, Judge Navarro set out in her underlying order a series of facts that she relied upon to find that there was apparent authority. In terms of the issue of World Market Center versus WMZ Phase 3, what she found is that the correspondence that related between the parties showed World Market Center Las Vegas or World Market Center. She also saw that there was an underlining order that related to the eviction of Global Accents that also had the words World Market Center on it as well. What we also see is the underlining documentation and emails that also have the words World Market Center. Now, as it pertains to the cloaking of apparent authority, what we also had in the underlying record was the documentation evidence sent by the World Market Center to Danny Partielli, the principal of Global Accents. In that, they sent Robert Marich, referred him to talk to Ms. Dominguez. When Mr. Partielli communicated with Ms. Dominguez, she referred him that he had to speak to the SMI defendants. When he spoke to the SMI defendants and asked if he could go, they indicated to him that they had the full authority to resolve this. When he went back and talked to Ms. Dominguez, she confirmed this as well. There is just a small glimmer of the facts that relate to show the apparent authority there. As to the other evidence that she considered, she also relied upon Mr. Leilu's admission that they had never informed Global Accents that SMI was terminated by the appellant, World Market Center. We also see the Khashoggi evidence that was in this case. First, Mr. Khashoggi, the owner, co-manager of the World Market Center, indicated that he had a long-standing relationship with Mr. Partielli and Mr. Partielli's family. He also indicated, which was omitted by counsel, that he received a weekly report related to the collection efforts that was done by the SMI defendants. Judge Navarro inquired about this during his testimony and asked, didn't you receive a list of the open collection cases that were done? This, in combination with his declaration and the underlying supporting facts that show that my client communicated with him about the offer, the offer that was on the table, and why the offer was reasonable, shows the underlying subjective and objective underlying basis that supported Judge Navarro's decision here. Briefly, I would like to address the question of jurisdiction for this appeal. What Judge Navarro, the Ninth Circuit initially had dismissed this appeal for being untimely. In doing so, it looked at the underlying time when the order was entered and filed by the underlying district court, finding that the appellant had filed their notice of appeal two days late. When you look at the underlying order that was entered by Judge Navarro, what she says is that the only parties remaining in the case at the time were WMCV and Global Accents. All other claims against all other parties had been resolved by either default, which was the Couture Defenders. What we also see is that she issued judgment in favor of Global Accents and dismissed all other claims. In total, what we see in this case is the apparent authority that was cloaked on behalf of the SMI defendants in favor of our client's subjective and objective belief. There is overwhelming and substantial evidence that supports my client's finding, belief, that the SMI defendants had apparent authority to enter into the Global Accents release. Now, what we also see in there as it pertains to the underlying attorney's fees provision is that they were also entitled to attorney's fees by way of the action brought to enforce the terms of the agreement or obligation set on the agreement as the prevailing party. Under Nevada law and the interpretation of a contract, when there is an attorney's fees provision, the court finds that as long as you're a prevailing party, meaning you don't have to be a plaintiff, you can be a counterclaimant or a defendant as well, with a substantial win on one of those issues, you're entitled to attorney's fees as well. Unless you have any questions, I'll go ahead and turn it back to Mr. Gerber. You're asking for appellate attorney's fees. Have you filed a motion for attorney's fees, appellate fees? I suppose you haven't because you don't know what your total costs are until we finish with you. Yes, Your Honor, that's true. You plan to file that, do you? Yes, we will do that along with the Ninth Circuit rules related to supporting the request for attorney's fees. I don't know if it would be remanded to the district court for that issue, but Nevada law is clear that if you're entitled to attorney's fees on the district court level, you're entitled to attorney's fees on the appellate level. It also specifies in the underlying contract that the prevailing party would be entitled to attorney's fees as well. Well, we'll sort that out when you file your motion. Yes, Your Honor. Thank you. All right. Thank you, Your Honors. You have some rebuttal time. Can I have some of his time, Judge? Sure. I'll give you a minute of his time, too, give you back what we took away. Briefly on three points, with regard to the jurisdiction, this is an issue that's been decided by the Ninth Circuit twice. Our first notice was a mistake, but it was a premature mistake. It wasn't one that caused for the dismissal with prejudice of this appeal. The judgment issued by the district court could not have been final since it didn't address damages and didn't resolve claims against the SMI defendants that were still alive at the trial level. With regard to the damages and the fees, Nevada law is very specific on this point. There are limited circumstances where you're allowed to seek your attorney's fees as special damages rather than as a prevailing party. Global Accents didn't plead attorney's fees as special damages. It didn't present any evidence at trial about their attorney's fees. If they are correct and are a prevailing party, why wouldn't that be under the agreement and you wouldn't really need to resort to the Nevada statute? Your Honor, it's a difference between seeking your fees as a piece of your damages and seeking them as a prevailing party. So what happens is the trial ended. Global Accents hadn't presented any evidence of its damages. It hadn't presented any evidence of the fees. But we justify dismissing the claim against you on the basis of Nevada law. Nevada law, but it doesn't take care of the agreement. Well, it means that the breach of contract claim couldn't have gone forward because they failed to prove a material element of the claim. Right. Under Nevada. Under Nevada law. Nevada substantive law. Yes. It's the right. Right. But in terms of the agreement itself, what the parties had agreed to in terms of prevailing party, isn't that an alternate basis for fees? It would be an alternate basis for fees, but they would have to have a justification to be a prevailing party at that point, and they weren't because they hadn't presented any evidence of damages at trial, and so their claim should have been dismissed. No, you can prevail without having to get damages. I mean, there are other things that you can do. You can get a declaratory judgment. You can get an injunction. There's other equitable relief besides damages. But they prevailed in that the they ended up being the winning party, correct? You wouldn't be here if they hadn't prevailed. Yes. Our argument for several reasons is that they should not have prevailed. I understand. I'm just asking you to assume when they did prevail at trial, now whether that will be sustained or not will be up to what happens on appeal. But let's assume that Judge Navarro's determination remains. Aren't they then the prevailing party under the agreement? They could not have prevailed on a breach of contract claim without presenting evidence of damages. It's an element of the claim that's the same as consideration would have been an in order to breach it, and it wasn't. So our argument is they should have never gotten a breach of contract judgment against WMCV because they would not have, because they didn't present evidence of a material element of the claim. In that case, they should not have been a prevailing party, and there should not have been an award of fees. And lastly — Okay. But you've also claimed that you've also made a — there are two different contract claims here. One is under the release. That's their claim, that you breached the release. Your claim is that they've breached the — they breached the original lease. Yes, Your Honor. Not the release. So on recouping the debt, at least in the trial court, they were the prevailing party. On the question of — on the question of — on the question of your claim that they have breached the lease, they are the prevailing party thus far. Yes. But there's — there's never been an argument or a finding for a prevailing party under the WMCV lease. The only — the only work that was ever done and the only issue ever raised to the district court was WMC's — WMCV's breach of the — of the release that it was not a party to. All right. Thank you. Thank you. Thank both counsel for your arguments, for coming over from Las Vegas. The case of WMCV v. Global is submitted.
judges: Wallace, McKeown, Bybee